77635. THOMPSON et al. v. HUCKABEE AUTO COMPANY
et al.
(379 SE2d 411)

BEASLEY, Judge.
Thompson and his wife appeal the grant of summary judgment to Huckabee Auto Company, General Motors Acceptance Corp., and McGibony Buick-Pontiac-GMC Truck, Inc.

The Thompsons went to Huckabee in search of a 1986 Buick Riviera. Although Huckabee did not have the desired car in stock, it checked with McGibony, another dealer, and located the 1986 Buick which the Thompsons wanted. Huckabee purchased the car from McGibony and sold it to plaintiffs. The retail sales contract was then assigned by Huckabee to GMAC, which as holder was expressly subject to claims and defenses the debtor could assert against the seller. The contract described the car as a "new 1986 Buick Riviera."

While washing the car about a week after the purchase, Thompson noticed that the hood had been repainted. He inquired of Hucka-

bee, which had no knowledge of the repair. Huckabee then asked McGibony which, upon delivery of the car from the manufacturer, had discovered that in transit some caustic fluid had dripped onto the hood and damaged the paint. McGibony did repaint the hood.

The Thompsons sued Huckabee and GMAC, contending only that the car was not in conformance with the retail sales contract in that it had been damaged and repaired and consequently was not "new," relying on *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329 (290 SE2d 497) (1982). McGibony was later added to the suit. Plaintiffs complained that McGibony committed a fraud upon the plaintiffs by selling to Huckabee a used and reconditioned car with the false representation that the car was "new."

1. All defendants moved for summary judgment which was granted by the court based on *General Motors Corp. v. Green*, 173 Ga. App. 188 (325 SE2d 794) (1984). *Green* involved a suit against the manufacturer of an automobile for breach of warranty and fraud because the car had received some non-mechanical damage during the manufacturing process, had been repaired, and was sold as new. The written manufacturer's warranty in that case involved the same language used here with regard to the fact that the car could have paint, sheet metal and other damage and still be "new" under the warranty, thereby defeating the breach of warranty claim. There was no dispute that the buyer had received the written information when he purchased the car. "The possible existence of factory-damage and factory-repairs was expressly disclosed, not concealed, in the sales agreement signed by [buyer], . . . ." *Green* at 191.

The burden of establishing the non-existence of any genuine issue of fact is upon the movant for summary judgment, and all doubts are resolved against him. *Jones v. Quigley*, 169 Ga. App. 862, 865 (2) (315 SE2d 59) (1984); *Lansky v. Goldstein*, 136 Ga. App. 607 (1) (225 SE2d 62) (1975). In order to prevail, the defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981).

So considering the record, the Thompsons did not receive a copy of the General Motors written warranty book until several days after signing the retail sales contract and receiving the automobile. Thus, the language contained therein which specifically notifies the purchasers that their car may have suffered factory or transit damage which would be corrected by either the factory or dealer is not dispositive of the claim, as it was in *Green*.

Although there is included on the retail sales contract a paragraph which specifically disclaims any express or implied warranties by the seller Huckabee, plaintiffs are relying on OCGA § 11-2-313 (b).

It provides that an express warranty is created by the seller upon "[a]ny description of the goods which is made part of the basis of the bargain . . . ." The warranty is that "the goods shall conform to the description." The retail sales contract described the car as "new." The specific disclaimer will not negate that affirmative statement. *Century Dodge v. Mobley*, 155 Ga. App. 712, 713 (2) (272 SE2d 502) (1980). The question of whether the car delivered was new is generally one of fact for the jury. Id.; see *Macon Chrysler-Plymouth v. Sentell*, 179 Ga. App. 754, 755 (1) (347 SE2d 639) (1986); *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329, supra.

Thus, as to Huckabee and its assignee, GMAC, the grant of summary judgment was error.

2. As to McGibony, plaintiffs alleged fraud. To prove it, all of the following elements must be shown: (1) that the defendant made the representations; (2) that at the time he made them he knew they were false; (3) that he made them with the purpose of deceiving plaintiff; (4) that plaintiff relied on those representations; and (5) that the loss and damage are the proximate result of their having been made. *Chrysler Corp. v. Marinari*, 182 Ga. App. 399, 400 (2) (355 SE2d 719) (1987).

First, there was no statement made by McGibony to plaintiffs at all. All of its dealings were with Huckabee. As far as the record reflects, there was no representation made by McGibony to Huckabee, other than it had a car like plaintiffs were seeking. Both being dealers, they were aware of the language of the written warranty and were knowledgeable of the fact that they could treat a car with body damage as "new" pursuant to that warranty. Thus, there were no statements made by McGibony to plaintiff and no false statements made by McGibony to Huckabee, entitling it to summary judgment. Although this was not the reason stated for the court's ruling in McGibony's favor, a ruling right for any reason will be affirmed. *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2 b) (307 SE2d 914) (1983).

*Judgment affirmed in part and reversed in part. Banke, P. J., and Birdsong, J., concur.*

. Decided February 9, 1989 —
Rehearings denied March 1, 1989 — ■

*Horace L. McSwain III*, for appellants.
*Jeffrey E. Tompkins, J. A. Powell, Jr.*, for appellees.